**IT IS ORDERED as set forth below:**



**Date: March 26, 2018**

_____
**Paul Baisier
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | : | CASE NO. **17-67132-PMB** |
| **KUNMI OLULEYE,** | : | CHAPTER 13 |
| Debtor. | : | |
| | : | |
| **KUNMI OLULEYE,** | : | |
| | : | ADVERSARY PROCEEDING |
| Plaintiff, | : | |
| | : | NO. **17-5270** |
| v. | : | |
| **J.P. MORGAN CHASE BANK, N.A, ATTORNEY DREW POWERS, MCCALLA RAYMER LEIBERT PIERCE, FANNIE MAE YING PAN,** | : | |
| Defendants. | : | |

**ORDER DISMISSING ADVERSARY PROCEEDING**

The above-referenced matter (the "Adversary Proceeding") comes before the Court on the

*Motion to Dismiss Plaintiff's Adversary Complaint* (Docket No. 20)(the "Chase Motion to Dismiss") filed on December 20, 2017 by Defendant J.P. Morgan Chase Bank, N.A ("Chase"). The Chase Motion to Dismiss seeks dismissal of the complaint of the Plaintiff-Debtor (the "Debtor") that commenced the Adversary Proceeding (the "Complaint").

*The Complaint*

In the Complaint, the Debtor sets forth claims against the above-captioned Defendants (the "Defendants") titled as follows: (1) Wrongful Foreclosure Determination of Extent and Validity of Lien and Quiet Title with Corresponding Injunctive Relief ("Count 1"); (2) Fraud Affecting Title Complaint to Recover Money for False Recorded Documents and Notary Fraud ("Count 2"); and (3) Declaratory Relief ("Count 3").

With regard to Count 1, the Debtor states in the Complaint that she is seeking "a determination of the extent and validity of a lien on [the Property]," and asserts that she is the true owner of the Property and that Chase and Fannie Mae claim interests in the Property which are "adverse to [the Debtor's] claim to clear title." (Complaint at pp. 5-6). As to Count 2, the Debtor contends that Chase and McCalla recorded false documents in an effort to "claim a lien or encumbrance against the Property," such that the Debtor is properly entitled to money and "equitable damages". (Complaint at p. 6). With regard to Count 3, the Debtor states that she "seeks declaratory rulings pertaining to the documents recorded that constitute a cloud upon [the Debtor's] title." (Complaint at pp. 6-7).

The Debtor further states in the Complaint that the Defendants engaged in fraudulent activity by recording false/forged assignments of the Debtor's security deed regarding the property at issue on the public records in Gwinnett County. The Debtor also contends that the fraudulent assignments violate "Georgia House Bill 185" and "Georgia House Bill 985."

Further, the Debtor asserts that such recording of the allegedly fraudulent assignments and advertising of the foreclosure sale constitute an attempt to collect a debt in violation of the Fair Debt Collections Practices Act. The Debtor also alleges that the Defendants lacked standing to perform a sale under power because Chase is a third-party debt collector and not a creditor of the Debtor. The Debtor also asserts in the Complaint a demand for the Defendants to "exhibit the note" under Uniform Commercial Code § 3-501.

*The Chase Motion to Dismiss*

In the Chase Motion to Dismiss, Chase first seeks dismissal of the Adversary Proceeding on jurisdictional grounds and pursuant to the doctrine of discretionary abstention. As to the jurisdictional argument, Chase asserts that the Court cannot retain subject matter jurisdiction over the Adversary Proceeding, as the underlying bankruptcy case has been dismissed. Moreover, Chase argues that, even if the underlying bankruptcy case were still pending, the Court never had jurisdiction over the claims asserted in the Adversary Proceeding at the outset.[1] Chase also asserts that, even if the Court had jurisdiction over the Adversary Proceeding, it should nonetheless abstain from adjudicating this matter pursuant to discretionary abstention under 28 U.S.C. § 1334(c)(1).[2] Chase also seeks dismissal of the Complaint on the bases of

---

[1] Chase explains in its *Memorandum of Law in Support of Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiff's Adversary Complaint* (Docket No. 21)(the "Chase Memo") that none of the three (3) forms of subject matter jurisdiction provided in 28 U.S.C. § 1334(b)—"arising under" title 11, "arising in" cases under title 11, or "related to" cases under title 11—apply to this Adversary Proceeding. First, Chase asserts that because all of the Debtor's claims derive from state law, they do not "arise under" title 11 or "arise in" the bankruptcy case. As to "related to" jurisdiction, Chase states that because the real property at issue was never part of the bankruptcy estate, resolution of the claims—which all relate to the property—will have no effect on the administration of the bankruptcy estate. Chase Memo at pp. 10-12.

[2] As to discretionary abstention, Chase outlines the fourteen (14) factors courts use to determine whether discretionary abstention is appropriate, and explains that a majority of the factors weigh in favor of abstention. Specifically, Chase argues that: (1) the Debtor is asserting identical claims in this action as she previously asserted against Chase in a prior state court action; (2) the prior state court action in which the Debtor asserted identical claims was adjudicated by the state court and is currently pending before the Georgia Court of Appeals; (3) the subject property was never part of the bankruptcy estate as it was foreclosed upon prior to the petition date; (4) the Debtor is asserting exclusively state law claims in the Complaint; (4) there exists no logistical bar to adjudicating the

3

claim preclusion and issue preclusion. As to claim preclusion, Chase asserts that the Debtor's claims for fraud and quiet title are barred by the doctrine of claim preclusion, as such claims were previously asserted by the Debtor against Chase in various prior state court actions that have been reduced to final judgment on the merits by a court of competent jurisdiction.[3] As to issue preclusion, Chase contends that all of the Debtor's claims are based upon identical issues that have been actually litigated in previous state court actions between the Debtor and Chase.[4] Lastly, Chase argues that, notwithstanding the operative preclusive effect of the prior state court actions, the Complaint fails to state a claim for each of the Debtor's asserted claims— wrongful foreclosure, fraud, and declaratory relief.

*The McCalla Motion to Dismiss and the Fannie Mae Motion to Dismiss*

In response to the Complaint, Defendants McCalla Raymer Leibert Pierce, LLC and Drew Powers (collectively, "McCalla") also filed a *Motion to Dismiss Plaintiff's Complaint for Wrongful Non-Judicial Foreclosure, Fraud Affecting Title, Free and Clear Title and Declaratory*

---

state law claims in the Compliant in state court; (5) this Adversary Proceeding appears to be an attempt by the Debtor to secure a more favorable ruling in the bankruptcy court—an apparent form of forum shopping; and (6) the interests of comity, fairness, and judicial efficiency are served by the Court abstaining from adjudicating this matter in favor of permitting the pending state court action to proceed. Chase Memo at pp. 14-15.

[3] Chase also notes that, although one of the prior state court actions may be pending appeal— thereby suspending any preclusive effect such a case may have pending appeal— the Complaint would still be subject to dismissal under the doctrine of claim-splitting. Here, Chase explains that under the claim-splitting doctrine, which is designed to prevent a litigant from maintaining multiple actions against the same parties involving the same set of facts, the Compliant should be dismissed because it involves the same parties and common set of facts as the state court action that is on appeal. Chase Memo at pp. 17-18, n.3.

[4] Chase asserts that all of the claims contained in the Complaint are predicated upon the Debtor's assertions that the assignment of the security deed related to the property at issue to Chase was fraudulent, that the assignment and the security deed are invalid, and the Debtor holds superior title to the property at issue, all of which have been adjudicated in prior state court actions between the Debtor and Chase. Chase Memo at pp. 17-18.

4

*Relief* (Docket No. 14)(the "McCalla Motion to Dismiss) on December 6, 2017.[5] In the McCalla Motion to Dismiss, McCalla asserts that the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6), applicable herein by Federal Rule of Bankruptcy Procedure 7012(b), on the ground that the Debtor failed to state any claims upon which relief can be granted.[6]

Defendant Federal National Mortgage Association ("Fannie Mae") also filed a *Motion to Dismiss Plaintiff's Adversary Complaint* (Docket No. 35)(the "Fannie Mae Motion to Dismiss"; collectively, with the Chase Motion to Dismiss and the McCalla Motion to Dismiss, the "Motions to Dismiss") on March 19, 2018.[7] In the Fannie Mae Motion to Dismiss, Fannie Mae seeks dismissal of the Complaint on the following grounds: (1) that the Court lacks subject matter jurisdiction over the claims asserted in the Adversary Proceeding, and (2) that the Complaint fails to state plausible claims for relief against Fannie Mae pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[5] Contemporaneously with the McCalla Motion to Dismiss, McCalla also filed a *Motion to Stay Discovery and Pretrial Deadlines* (the "Motion to Stay")(Docket No. 15) in which it requested that the Court enter an order staying discovery and various pretrial deadlines pending the Court's adjudication of the McCalla Motion to Dismiss. On December 22, 2017, the Court entered an order granting the Motion to Stay (Docket No. 22) and stayed the discovery period and the deadlines for conducting a Rule 26(f) conference, serving initial disclosures, and filing a joint preliminary report and discovery plan pending the disposition of the Chase Motion to Dismiss and the McCalla Motion to Dismiss.

[6] Specifically, as to Count 1, McCalla asserts that the Debtor fails to raise any claims against McCalla; and to the extent the Debtor does raise a claim in Count 1, McCalla contends that the Debtor fails to provide any factual support for such a claim. McCalla's *Memorandum of Law in Support of its Motion to Dismiss* (Docket No. 14, p. 5). As to Count 2, McCalla states that the Debtor failed to plead with particularity facts that support her allegation of fraud, nor has the Debtor sufficiently pleaded all of the requisite elements for fraud under Georgia law. *Id.* at pp. 5-7. As to Count 3, McCalla contends that the Debtor has failed to assert any allegations which demonstrate an actual case or controversy between the Debtor and McCalla, such that Count 3 fails to state a claim for declaratory relief. *Id.* at pp. 7-8.

[7] In the Fannie Mae Motion to Dismiss, Fannie Mae explains that the timing of the filing of the pleading is attributable to the fact that the Debtor failed to properly serve process on Fannie Mae in this Adversary Proceeding pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(3).

*The Purported Responsive Pleadings and Motion to Stay Dispossessory Proceeding*

In response to the Chase Motion to Dismiss and McCalla Motion to Dismiss, two (2) pleadings were purportedly[8] filed by the Debtor: (1) a *Response to Defendants' Answers and Motion to Deny Defendants' Motion to Dismiss* (Docket No. 24)(the "Response") filed on January 9, 2018, and (2) a *Motion to Object to Dismiss Adversary Complaint and Motion to Object to Staying Discovery* (Docket No. 32)(the "Motion to Object") filed on February 9, 2018. Later a *Motion to Stay Fannie Mae's Dispossessory Proceeding in Gwinnett County Magistrate Court* was also purportedly filed by the Debtor on March 5, 2018 (Docket No. 34)(the "Motion to Stay Dispossessory Proceeding").

## BACKGROUND

Upon review of the Complaint, the Motions to Dismiss, the Response, the Motion to Object, the Motion to Stay Dispossessory Proceeding and the other pleadings filed in this Adversary Proceeding,[9] the relevant facts appear to be as set forth below.

*The Property and the Assignments*

On September 3, 2003, the Debtor and Ibiyinka Oluleye (collectively, the "Borrowers") obtained a loan (the "Loan") from First Horizon Home Loan Corporation ("First Horizon") to purchase real property located at 2838 Heather Row Ridge, Lilburn, Georgia 30047 (the "Property"), evidenced by a note in the original principal amount of $310,250.00 (the "Note").

---

[8] Although the Debtor filed a document entitled Judicial Notice herein on January 10, 2018 (Docket No. 25), that document is not sufficient to permit the person named therein to act as an agent of the Debtor in this case. Based upon a review of the Response, the Motion to Object, and the Motion to Stay Dispossessory Proceeding, it appears that the person who actually signed those pleadings is not the Debtor or counsel for the Debtor. Nevertheless, because no other response was filed on behalf of the Debtor, the Court has considered these pleadings as responses to the Motions to Dismiss in connection with this Order.

[9] Other relevant pleadings in the matter include: (1) McCalla's *Reply in Support of Their Motion to Dismiss Plaintiff's Complaint for Wrongful Non-Judicial Foreclosure, Fraud Affecting Title, Free and Clear Title and Declaratory Relief or, Alternatively, Their Motion to Strike "Plaintiff's Response to Defendants' Answer and Motion to Deny Defendants' Motion to Dismiss"* (Docket No. 27); and (2) Chase's *Reply in Support of Motion to Dismiss Plaintiff's Adversary Complaint* (Docket No. 28).

The Note was secured by a security deed (the "Security Deed") executed by the Borrowers and conveying the Property to First Horizon. The Security Deed was recorded at Deed Book 34919, Page 219 in the Gwinnett County real property records. On July 17, 2008, First Horizon assigned the Security Deed (the "First Assignment") to Metlife Home Loans ("Metlife"). The First Assignment was recorded in the Gwinnett County real property records at Deed Book 49092, Page 265. The Security Deed was later assigned from Metlife to Chase on April 25, 2013 (the "Second Assignment")(together, with the First Assignment, the "Assignments") and was recorded in the Gwinnett County real property records at Deed Book 52466, Page 181.

*The Pre-Foreclosure Actions*

Several months later, on November 12, 2013, the Debtor initiated an action against Chase entitled *Verified Petition to Quiet Title and Declaratory Judgment* in Gwinnett County Superior Court (the "Superior Court"), Case Number 13-A-9567-10 (the "9567 Action")(Docket No. 21, Ex. A). In the 9567 Action, the Debtor challenged the Assignments under the theories of fraud and forgery, and sought a declaration from the Superior Court that Chase had no legal or equitable interest in the Security Deed or the Property. (Docket No. 21, Ex. A, pp. 3-10, 12-15). The Debtor also pursued a claim for quiet title in the 9567 Action. (Docket No. 21, Ex. A, pp. 10-11). The 9567 Action was subsequently dismissed by the Superior Court on April 22, 2014 for the Debtor's failure to state a claim for relief under O.C.G.A. § 9-11-12(b)(6)(the "9567 Dismissal Order")(Docket No. 21, Ex. B). In the 9567 Dismissal Order, the Superior Court explained that: (1) the Debtor, as a stranger to the Assignments, lacked standing to challenge their validity; (2) the Debtor's failure to tender the full amount due under the Loan precluded her from seeking equitable relief; (3) and the Debtor, by virtue of the Security Deed, could not seek quiet title relief as she did not hold legal title to the Property. (Docket No. 21, Ex. B at p. 1). On

7

January 29, 2015, the Georgia Court of Appeals affirmed the 9567 Dismissal Order (Docket No. 21, Ex. C). The Debtor did not appeal the Georgia Court of Appeals' decision regarding the 9567 Dismissal Order.

On July 21, 2015, Chase filed a *Complaint for Declaratory Judgment* in the Superior Court, Case Number 15-A-7682-10 (the "Declaratory Judgment Action")(Docket No. 21, Ex. D), seeking a declaration by the Superior Court that the Debtor's "recording of documents related to her [p]roperty in the Superior Court deed book were void and of no legal effect, and that Chase's security interest remained valid and enforceable." Chase Memo at pp. 4-5. In response to the Declaratory Judgment Action, the Debtor filed a *Counterclaim Complaint for Estoppel and Unclean Hands* (the "Counterclaim Complaint")(Docket No. 21, Ex. E) in which she asserted counterclaims for equitable estoppel, unclean hands, laches, and fraud, and asserted that the Assignments were void and should be cancelled. On March 1, 2016, the Superior Court granted summary judgment in Chase's favor and dismissed the Counterclaim Complaint with prejudice (the "Declaratory Judgment Action Dismissal")(Docket No. 21, Ex. F). Subsequently, the Georgia Court of Appeals affirmed the Declaratory Judgment Action Dismissal (Docket No. 21, Ex. G), and the Debtor's petition for certiorari to the Georgia Supreme Court (Docket No. 21, Ex. H) was denied.

*The Foreclosure*

Following the dismissal of the state court actions referenced above, Chase foreclosed on the Property on September 5, 2017, and was the successful bidder (the "Foreclosure"). A Deed Under Power evidencing the Foreclosure was executed by Chase on September 20, 2017 and recorded in the Gwinnett County real property records at Deed Book 55502, Page 787. Chase later conveyed the Property by special warranty deed to Fannie Mae on October 3, 2017.

8

*The Post-Foreclosure Actions*

Subsequent to the Foreclosure, the Debtor again filed lawsuits regarding the Property in the Superior Court, this time against Chase and the other Defendants. First, on September 26, 2017, the Debtor filed a *Verified Petition for Quiet Title with Request for Special Master Fraud Affecting Title and Wrongful Foreclosure*, Case Number 17-A-9370-10, against the Defendants in which she asserted claims for quiet title, fraud affecting title, and wrongful foreclosure (the "9370 Action")(Docket No. 21, Ex. I). In the 9370 Action, the Debtor repeats various assertions previously raised in the 9567 Action and the Declaratory Judgment Action, including alleging that the Assignments were fraudulent, fabricated, and forged, and seeking a declaration by the Superior Court that the Debtor holds superior title to the Property. (Docket No. 21, Ex. I at pp. 6-11). The Debtor also asserted, *inter alia*, that: Chase lacked standing to perform a sale under power as a third-party debt collector; the Defendants illegally recorded the Assignments in violation of "Georgia House Bill 185" and "Georgia House Bill 985"; payments due under the Security Deed were discharged by the bankruptcy court in Case Number 10-96330; Chase and Fannie Mae had no interest in the Debtor's payments due under the Security Deed; in recording the Assignments and foreclosing upon the Property, the Defendants were attempting to collect a debt in violation of the Fair Debt Collections Practices Act; and pursuant to Uniform Commercial Code § 3-501, the Defendants are required to "exhibit the [Note]." (Docket No. 21, Ex. I at pp. 10-13).

In addition to the 9370 Action, the Debtor also filed a *Verified Emergency Petition for Temporary Restraining Order and/or Preliminary Injunction*, Case Number 17-A-9372-10, against the Defendants on September 26, 2017 (the "9372 Action")(Docket No. 21, Ex. J). In the 9372 Action, the Debtor petitioned the Superior Court to enter a temporary restraining order

9

and/or preliminary injunction to void the Foreclosure, contending that the Foreclosure was not conducted in accordance with Georgia law and that the Defendants illegally conducted the sale under power in violation of the Fair Debt Collection Practices Act. (Docket No. 21, Ex. J at pp. 2-6). The Debtor also requested in the 9372 Action that the Superior Court compel production of the Note and proof of the validity of the Assignments. (Docket No. 21, Ex. J at p. 6)

The Superior Court, by separate orders both entered on September 29, 2017, dismissed the 9370 Action and the 9372 Action (collectively, the "Post-Foreclosure Dismissal Orders")(Docket No. 21, Exs. K & L) on res judicata grounds. In the Post-Foreclosure Dismissal Orders, the Superior Court compared the Debtor's prior actions against the Defendants (the 9567 Action and the Declaratory Judgment Action) with the 9370 Action and the 9372 Action to conclude that all four (4) cases involved the Debtor alleging that the Assignments were fraudulent, that the identities of the parties, or their privies, were identical in all four (4) cases, and the fact that the prior actions were adjudicated on the merits by a court of competent jurisdiction satisfies the requirements of res judicata. (Docket No. 21, Ex. K at p. 6; Ex. L at p. 6). As a result, the Superior Court found that the Debtor was barred under the doctrine of claim preclusion from bringing the 9370 Action and the 9372 Action. (Docket No. 21, Ex. K at p. 7; Ex. L at p. 7). The Debtor filed two (2) notices of appeal of the Post-Foreclosure Dismissal Orders to the Georgia Court of Appeals on October 23, 2017 (the "9370 and 9372 Appeals")(Docket No. 21, Exs. N & O). There is however no evidence in the Georgia Court of Appeals docket that the 9370 and 9372 Appeals are actually pending.

Additionally, the Superior Court entered a *Bill of Peace Order* (the "Bill of Peace")(Docket No. 21, Ex. M), also on September 29, 2017, in which it issued a perpetual injunction enjoining the Debtor from filing any further actions against the Defendants regarding

10

the Foreclosure in Gwinnett County without prior approval from the Superior Court. In the Bill of Peace, the Superior Court noted that, since 2013, the Debtor has initiated several actions in the Superior Court related to the foreclosure and disposition of the Property. (Docket No. 21, Ex. M at p. 1). Moreover, the Superior Court also found that the issues raised in the prior lawsuits (the 9567 Action, the Declaratory Judgment Action, the 9370 Action, and the 9372 Action) were all identical, and that the merits of the prior lawsuits had previously been adjudicated and decided. (Docket No. 21, Ex. M at p. 1).

The underlying bankruptcy case was filed under Chapter 13 of the United States Bankruptcy Code by the Debtor on October 2, 2017.[10] Nearly one (1) month later, on November 6, 2017, the Debtor initiated the Adversary Proceeding by filing the Complaint. In the Complaint, the Debtor appears to challenge, *inter alia*, the foreclosure on the Property by Chase.

Based upon a review of the pleadings filed in the Adversary Proceeding and for the reasons discussed more fully below, the Court finds it appropriate to abstain from adjudicating the claims asserted herein.

## LEGAL ANALYSIS

The Court concludes that it should abstain from adjudicating the Adversary Proceeding on the basis of discretionary abstention under 28 U.S.C. § 1334(c)(1). Section 1334(c)(1) provides in pertinent part:

> "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

---

[10] The underlying bankruptcy case was dismissed on December 7, 2017 for, *inter alia*, the Debtor's failure to maintain Chapter 13 Plan payments to the Chapter 13 Trustee as required by 11 U.S.C. § 1326. (Main Bankruptcy Case, Docket No. 34). The underlying bankruptcy case was closed on January 5, 2018.

11

The purpose of exercising discretionary abstention is to "ensure that the jurisdiction of the bankruptcy court is exercised only when appropriate to the expeditious disposition of bankruptcy cases." *In re Queen*, 2013 WL 6116864, at *2 (Bankr. N.D. Ga. November 18, 2013)(internal quotes and citations omitted).

There are fourteen (14) factors courts use to determine whether "discretionary" or "permissive" abstention is warranted under Section 1334(c)(1), including: "(1) the effect of abstention on the efficient administration of the bankruptcy estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the basis of bankruptcy jurisdiction, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted 'core' proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; (14) the possibility of prejudice to other parties in the action." *In re Blackman*, 2017 WL 6033418, at *3 (Bankr. N.D. Ga. Dec. 5, 2017)(citing *Flyboy Aviation Props., LLC v. Franck* (*In re Flyboy Aviation Props., LLC*), 2013 WL 2317628, at *2 (Bankr. N.D. Ga. May 21, 2013)). "Although no single factor is determinative, courts have discretion in determining the relative weight afforded to each factor." *Blackman*, 2017 WL 6033418, at *3.

Upon review, the Court finds that a majority of these factors weigh heavily in favor of exercising discretionary abstention in this case. Specifically, the factors that strongly favor discretionary abstention are those that concern: the existence of related state court proceedings and respect for state courts (factors 4 and 13), the predominance of state law claims (factor 2), the relatedness of the claims to the bankruptcy estate and the effect such claims will have on the administration of the estate (factors 1, 5, 6, 7, and 12), the burden this matter places on the Court's docket (factor 9), and the likelihood that the Adversary Proceeding involves forum shopping by the Debtor (factor 10).

With respect to factors 4 (the presence of a related proceeding commenced in state court or other non-bankruptcy court) and 13 (comity), the Debtor has asserted nearly identical claims in the Complaint she previously asserted in the various state court actions referenced *supra*. *Compare* Exs. A & I, *with* the Complaint. As to the 9370 Action and the Adversary Proceeding, the Debtor in both actions: challenges the Foreclosure, asserts that the Assignments are fraudulent and fabricated, contends that none of the Defendants have a valid interest in the Property, asserts that Defendants violated the Fair Debt Collections Practices Act in utilizing the allegedly fraudulent Assignments to foreclose upon the Property, states that the Defendants violated "Georgia House Bill 185" and "Georgia House Bill 985," and asserts a demand pursuant to Uniform Commercial Code § 3-501 that Defendants "exhibit the note." Likewise, the 9567 Action contains similar claims as those asserted in the Complaint. For instance, in both the Complaint and the 9567 Action, the Debtor attempts to challenge the validity of the Assignments and seeks a determination that Chase has no interest in the Property. Thus, there exists a substantial nexus between the claims asserted herein and those asserted in the state court

13

proceedings such that the principles of comity[11] and respect for state courts weigh in favor of this Court abstaining from litigating the merits of claims previously adjudicated in prior state court actions.[12]

As to factor 2, the predominance of state law claims, this factor clearly cuts in favor of abstention. Here, all of the Debtor's claims— wrongful foreclosure and quiet title, false and fraudulent assignments of the Security Deed, and declaratory relief— are grounded solely in state law and present no bankruptcy law issues. Although the Debtor cites to some federal law in the Complaint, the state law claims clearly predominate.

Moreover, several factors (1, 5, 6, 7, and 12) that focus on the relatedness of the claims to the bankruptcy estate and the effect such claims will have on the administration of the estate, militate toward abstention. With respect to factor 1, resolution of the claims asserted herein will have no effect on the underlying bankruptcy estate, given that the underlying bankruptcy case has been dismissed and closed. As to factors 5 and 6, there is no arguable alternative basis for jurisdiction outside of 28 U.S.C. § 1334, and the claims asserted herein are remote and bear no relation to the Debtor's bankruptcy case.

Factor 7 also weighs in favor of abstention, since this Adversary Proceeding does not fall under the list of core proceedings provided by 28 U.S.C. § 157(b)(2). In addition, these claims "existed prior to the filing of the bankruptcy case" and "would continue to exist independent of the provisions of Title 11" such that "neither the rights nor obligations of the parties would be significantly affected as a result of the filing of the bankruptcy case." *In re Queen*, 2013 WL

---

[11] As noted previously, the Debtor has been enjoined in the Bill of Peace from bringing precisely this litigation in the Gwinnett County courts. Comity would suggest that this Court honor that prohibition and not permit that same litigation to proceed here.

[12] The Debtor's prior state court litigation (the 9567 Action, the Declaratory Judgment Action, the 9370 Action, and the 9372 Action), and the extent to which such litigation mirrors the claims and parties involved in this Adversary Proceeding, may also raise claim preclusion or res judicata issues.

14

6116864, at *3 (quoting *Duncan v. Deutsche Nat. Bank Trust Co.*, 2012 WL 4322667, at *3 (N.D. Ohio Sept. 20, 2012)(internal quotations omitted). This is especially true in light of the fact that all of the circumstances that give rise to this action "occurred outside of the bankruptcy case and the claims exist independently under state law." *Id*. at *3. As to factor 12, none of the Defendants are scheduled as parties in the main bankruptcy case, nor did they file a proof of claim therein.

The final two (2) factors—the burden on the Court's docket and the likelihood of forum shopping— also favor the exercise of discretionary abstention. Adjudicating this Adversary Proceeding, because resolution of the claims will have no effect on the underlying bankruptcy case, would place an unnecessary burden on the Court. Further, the similarities between this action and the prior state court actions, coupled with the timing of the filing of the Complaint in relation to the filing of the 9370 and 9372 appeals, indicate that the Debtor is engaging in forum shopping. Not only is the Debtor attempting to assert in this Adversary Proceeding claims that are nearly identical to those previously made in the prior state court actions, but the Debtor also filed this action approximately one (1) month after the Superior Court dismissed the 9370 and 9372 Actions and entered the Bill of Peace enjoining the Debtor from filing any further suits against the Defendants regarding the Foreclosure without prior court approval. Hence, it appears that the Debtor filed this Adversary Proceeding with the hope that this Court would issue a more favorable ruling contrary to the Superior Court's four (4) prior decisions. Such an attempt clearly constitutes forum shopping and thus further supports this Court's decision to abstain.

## CONCLUSION

Based upon the foregoing, and because the majority of the factors, when construed together, favor discretionary abstention, and no factors mitigate against abstention, the Court

finds it appropriate to abstain from adjudicating the Adversary Proceeding. Accordingly, it is hereby

**ORDERED** that the Chase Motion to Dismiss be, and the same hereby is, **GRANTED**. And it is further

**ORDERED** that the Complaint is hereby **DISMISSED** in its entirety as to all the Defendants**.** And it is further

**ORDERED** that the McCalla Motion to Dismiss and the Fannie Mae Motion to Dismiss are **DENIED** as moot. And it is further

**ORDERED** that the Motion to Stay Dispossessory Proceeding is **DENIED**.

The Clerk is directed to serve a copy of this Order upon the Debtor, the Defendants, counsel for the Defendants, the Chapter 13 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**